UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ST. MARTINUS UNIVERSITY, N.V.,

                          Plaintiff,

        -against-                                                **REPORT AND**
                                                                 **RECOMMENDATION**
SMU LLC, a Delaware limited liability                            21 CV 1888 (DG) (CLP)
company, and JOHN VINCENT SCALIA,

                          Defendants.
-------------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:

        On April 8, 2021, plaintiff St. Martinus University, N.V. ("SMU" or "plaintiff"), a

Curaçao public company, commenced this action against defendants SMU LLC, a Delaware

Limited Liability Company ("SMU NY"),[1] and John Vincent Scalia (together, "defendants"),

alleging claims of conversion, unjust enrichment, and fraud, based on Scalia's role on the

Supervisory Board of SMU, and his alleged fraudulent transfer of student loan funds to SMU NY

that should have been used by SMU to cover various student related expenses in Curaçao.

        Pending before this Court on referral from the Honorable Diane Gujarati, United States

District Judge, is defendant Scalia's motion to dismiss the Complaint on a variety of grounds,

including: 1) the claims are barred by the statute of limitations; 2) collateral estoppel; 3)

principles of international comity; 4) the doctrine of *forum non conveniens*; 5) the Complaint

---

[1] Defendant Scalia raises a question as to whether plaintiff has named the wrong entity in naming defendant SMU LLC, referred to as "SMU NY" in plaintiff's Complaint and herein. (Defendant John Vincent Scalia's Memorandum of Law in Support of His Motion to Dismiss the Complaint in its Entirety ("Def.'s Mem."), ECF No. 24-1, at 34 n.33). Defendant contends that plaintiff should have named as defendant "St. Martinus University LLC, a Delaware limited liability company." (Id.) According to defendant Scalia, St. Martinus University LLC is a wholly owned subsidiary of plaintiff SMU, and it is St. Martinus University LLC which maintained the bank account in New York referenced in the Complaint, not SMU LLC. (Id.) For the purposes of this pending motion to dismiss, the Court adopts plaintiff's definition and will refer to "SMU NY" as the entity that maintained the bank account in New York that is alleged to have been involved with the student loan transfers.

fails to plead fraud with sufficient particularity; and 6) the Complaint fails to state a claim against defendant Scalia and fails to allege liability for Scalia in his individual capacity.

For the reasons set forth below, it is respectfully recommended that defendant's motion to dismiss be granted.

## FACTUAL BACKGROUND[2]

Plaintiff SMU is alleged to be a public company, incorporated under the laws of the Netherlands Antilles, with its registered office located in Curaçao. (Compl.[3] ¶ 2). Defendant SMU NY is alleged to be a Delaware Limited Liability Company, with a registered office and principal place of business located in 2515 Arthur Kill Road, Staten Island, N.Y. 10309. (Id. ¶ 3). Defendant John Vincent Scalia ("Scalia") is alleged to be a resident of New York, who engaged in a business or carried on a business venture in New York. (Id. ¶¶ 4–5).

According to the Complaint, SMU was founded in October 2000 as a private higher education institution in Curaçao to provide education and training in the medical and healthcare fields and to provide research and services in these areas. (Id. ¶ 9). The Complaint alleges that by 2007, SMU had fallen into financial difficulty due to the mismanagement of funds. (Id. ¶ 10). At that time, defendant Scalia "held the occupation of Supervisory Board of SMU and managed the affairs of the corporation." (Id. ¶ 11). It is alleged that "[o]n or around December 2007 and February 2008, [d]efendant Scalia . . . provided loans to SMU, which SMU has since been obligated to pay back." (Id. ¶ 12). However, in something of a contradiction, the Complaint also alleges that "[n]o proof has ever been submitted regarding funds loaned directly to SMU." (Id. ¶ 13). Instead, plaintiff alleges that a court in Curaçao not only found that defendants could not

---

[2] The Court notes that certain of the allegations in plaintiff's Complaint are less than clear and thus, rather than paraphrase the allegations, the Court has directly quoted actual passages from the Complaint where there may be differing interpretations as to what the plaintiff is attempting to allege.
[3] Citations to "Compl." refer to plaintiff's Complaint and Demand for Jury Trial, filed April 8, 2021. (ECF No. 1).

establish that any loans were made to SMU, but also determined that portions of the funds allegedly loaned to SMU "would have went [sic] to SMU NY and not SMU to its benefit." (Id.)

"In addition, to concerns about purported loans made," the Complaint alleges that American students attending SMU qualified for student loan programs and those payments "would have been received by SMU N.Y."[4] (Id. ¶ 15). However, according to the Complaint, "it has been unascertained whether student loan funds received by SMU LLC N.Y. were ever released by Scalia or SMU N.Y. for SMU's legitimate purposes." (Id. ¶ 16).

As discussed in greater detail infra at 5–14, the parties have been involved in a number of prior actions which, at times, have included defendant Scalia and other entities and individuals, in which plaintiff has alleged two distinct schemes that victimized SMU:  1) a fraudulent loan scheme in which it was alleged that defendant Scalia and others loaned money to SMU (the "Promissory Notes scheme"); and 2) a scheme in which it was alleged that certain student loan funds that were to be transmitted to SMU for tuition payments and other purposes were wrongfully transferred to SMU NY (the "student loan scheme").  Based on a review of the pleadings in prior actions, the first series of allegations discussed above appear to relate to the Promissory Notes scheme to the extent that they allege that Scalia "provided loans to SMU, which SMU has since been obligated to pay back." (Compl. ¶ 12).  The second series of allegations clearly pertain to the student loan scheme to the extent that they allege claims relating to "student loan funds received by SMU LLC N.Y." (Id. ¶ 16).

However, in opposing defendant's motion to dismiss, plaintiff asserts that its claims in the instant Complaint relate only to the student loan scheme and center only on the alleged

---

[4] While the Court adopts the nomenclature of "SMU NY," at times in the Complaint, plaintiff refers to this entity also as SMU N.Y. or SMU LLC N.Y.  (See, e.g., Compl. ¶ 16).  The Court understands all these names to refer to the same entity.  When directly quoting from the parties' papers, the Court, in this Report and Recommendation, has not altered the nomenclature used in referring to this entity.

fraudulent transfer of student loan funds by defendant Scalia. (Pl.'s Resp.[5] at 7). Plaintiff explains that this "recently uncovered fraud has prompted Plaintiff to file this action against those that received funds in place of SMU." (Compl. ¶ 14).[6] The Complaint itself, however, is wholly unclear and even defendant interpreted the Complaint to bring claims related to the two distinct schemes. (Def.'s Mem. at 4–5). In an excess of caution, the Court has analyzed the sufficiency of the Complaint as if both schemes are being alleged.

In the first count of the Complaint, alleging conversion, plaintiff alleges: "As described herein, Scalia and/or SMU N.Y. received specific funds due to SMU." (Id. ¶ 18). The Complaint alleges that "[i]n transferring valuable assets and business opportunities of SMU," for "zero or grossly insufficient consideration," defendants unlawfully converted those assets and opportunities for their own personal benefit, causing damage to SMU. (Id. ¶ 19).

In the second count of the Complaint, alleging unjust enrichment, plaintiff alleges that defendants "were unjustly conferred a benefit" and "knowingly accepted a benefit, including the repayment of [sic] alleged 'loan' to SMU and student loan funds," and that, as a result, defendants were unjustly enriched. (Id. ¶¶ 22–24). Plaintiff asserts that "[i]t would be inequitable for the Defendants to retain the benefit of repayment of a loan SMU never received."[7] (Id. ¶ 25).

Finally, the third count of the Complaint alleges fraud in that "Scalia, issued or caused to issue, wire transfers of at least $177,000.00 to SMU N.Y.'s bank account under the control of Scalia, of student loan proceeds paid to SMU by Nelnet." (Id. ¶ 27). It is further alleged that

---

[5] Citations to "Pl.'s Resp." refer to "Plaintiff St. Martinus University Memorandum or [sic] in Opposition to Defendants [sic] Motion to Dismiss," dated April 5, 2022. (ECF No. 26).
[6] It is unclear if the "recently uncovered fraud" relates to the Promissory Notes scheme or the student loan scheme.
[7] This allegation seems to relate to the Promissory Notes scheme insofar as it references the "repayment of alleged 'loan' to SMU" in addition to the "student loan funds." (Compl. ¶ 23).

SMU NY was supposed to make the funds available to SMU in Curaçao for tuition, clinical rotation expenses, and student living expenses, but Scalia and SMU NY never released those funds to SMU. (Id. ¶¶ 28, 29). Plaintiff claims that defendants actively and willfully concealed the existence and location of the funds with the intent to defraud SMU and prevent it from discovering the truth about the funds. (Id. ¶¶ 31, 32).

Following the filing of the Complaint, defendant Scalia requested permission to file the instant motion to dismiss in lieu of an Answer.[8] (See Def. July 12, 2021 Ltr., ECF No. 14). The district court held a pre-motion conference on January 12, 2022 and directed the parties to agree on a briefing schedule. (ECF No. 18). On September 22, 2022, the motion was referred to Magistrate Judge Roanne L. Mann to prepare a Report and Recommendation. On October 13, 2022, the case was reassigned to the undersigned.

## PRIOR CASE HISTORY[9]

As noted, this is not the first time that certain of the issues raised in the instant complaint have been the subject of court proceedings both in the United States and Curaçao. According to defendant, since 2013, SMU has been involved in various legal proceedings in Curaçao and in the United States District Court for the Southern District of Florida, arising from SMU's relationship with Scalia, Caribbean Health Holdings, LLC ("CHH"), a Florida limited liability company, and non-party Derek Van Walleghem. (Def.'s Mem. at 6–8; Noordhoek Decl.[10] ¶ 4).

---

[8] It is unclear whether SMU NY was ever served; no affidavit of service has been filed by plaintiff, and as of the date of this Report and Recommendation, SMU NY has not appeared in the action. The time to serve has long expired.

[9] The Court has noticed slight variations in the English translations of the Curaçaoan court documents that defendant and plaintiff have attached to their respective filings. Upon the Court's review, such variations do not seem related to the substance of these documents and the parties have not protested as much or raised this issue. Thus, in analyzing the issues raised in the motion, the Court has not addressed the slight differences in phraseology between the various versions of the translated documents unless the distinctions are critical to the Court's analysis.

[10] Citations to "Noordhoek Decl." refer to the Declaration of Pieter Michiel Noordhoek in Support of Defendant John Vincent Scalia's Motion to Dismiss, dated February 25, 2022. (ECF No. 24-2). Mr. Noordhoek is a duly licensed attorney in Curaçao and a senior attorney at the firm of HBN Law in Curaçao. (Id. ¶ 3). The Court notes

Plaintiff has previously alleged that both Walleghem and Scalia were members of SMU and were parties to a 2007 Shareholder's Agreement, which plaintiff annexed to the complaint it filed with the federal court in the Southern District of Florida, discussed <u>infra</u> at 11–13. (Fla. Compl., Guzov Decl. Ex. 4[11] ¶¶ 15–16). Plaintiff has also previously alleged that both Walleghem and Scalia were the owners and managers of CHH, which was registered as a Florida limited liability company in 2009 (Fla Compl. ¶¶ 3, 27); defendant Scalia explains that he transferred his interest in SMU to CHH in 2010. (Def.'s Mem. at 5).

In moving to dismiss, defendant Scalia, among other things, argues that collateral estoppel mandates dismissal in this case and that even if the claims are not barred, principles of international comity require abstention. (<u>Id.</u> at 2). In addition, defendant argues that the doctrine of *forum non conveniens* favors dismissal. (<u>Id.</u>) Thus, in order to understand the basis for defendants' arguments and because the Complaint itself lacks some relevant and necessary context, the history of these prior lawsuits is summarized briefly.

A. The 2013 Shareholders' Suit

In 2013, CHH filed an action in the Court of First Instance of Curaçao against SMU and one of its shareholders, seeking judicial recognition of CCH's status as a shareholder of SMU. <u>See</u> <u>Caribbean Health Holdings LLC v. St. Martinus University N.V., et al.</u>, Case No. KG 60324/2013; (<u>see also</u> Fla. Compl. ¶¶ 67–69; Fla. Order, Guzov Decl. Ex. 1[12] at 7). The case

---

that Mr. Noordhoek's Declaration contains matters outside the four corners of plaintiff's Complaint. However, in order to understand the prior case history and the other proceedings relating to these parties, and to put into perspective the instant action, the Court has cited to a number of exhibits attached to the Noordhoek Declaration. Otherwise, except as discussed in more detail below, the Court has not relied on this extrinsic evidence in analyzing the motion to dismiss. (<u>See</u> discussion <u>infra</u> at 14–18).

[11] Exhibit 4 is the Second Amended Complaint filed by SMU on October 17, 2019 in <u>St. Martinus University, N.V. v. Caribbean Health Holding, LLC</u>, No. 19 CV 22278 (S.D. Fla.), which is attached to the Declaration of Debra J. Guzov in Support of Defendant John Vincent Scalia's Motion to Dismiss Complaint ("Guzov Decl."), dated February 25, 2022). (ECF No. 24-7).

[12] Exhibit 1 to the Guzov Decl. is the Order of the district court dated February 27, 2020 in <u>St. Martinus University, N.V. v. Caribbean Health Holding, LLC</u>, No. 19 CV 22278 (S.D. Fla.) dismissing SMU's action. (ECF No. 24-4).

was settled on February 18, 2013 (the "Curaçao Settlement Agreement") and SMU agreed to unconditionally recognize CCH as a shareholder. (Curaçao Settlement Agreement, Noordhoek Aug. 7, 2019 Decl. Ex. 1[13] ¶ 1).

B. The Curaçao Promissory Notes Case

In July 2015, CHH filed a second action against SMU in the Court of First Instance in Curaçao, seeking to recover sums due under certain promissory notes allegedly given in Curaçao by SMU in favor of Scalia and Walleghem, which they later assigned to CHH. Caribbean Health Holding LLC v. St. Martinus Univ. N.V., Case No. AR 74758/2015 (the "Curaçao Promissory Notes case"); (see Curaçao Promissory Notes Jmt., Noordhoek Aug. 7, 2019 Decl. Ex. 4[14]). On February 18, 2019, after an evidentiary hearing, the Court of First Instance of Curaçao ruled that CHH had proven the enforceability and validity of the promissory notes and entered a judgment in favor of CHH in the amount of $181,871.31, plus interest ("Feb. 2019 Curaçao Judgment"). (Curaçao Promissory Notes Jmt. ¶¶ 2.2.5, 3).

After CHH levied an attachment on February 26, 2019 based on the court's ruling (see Fla. Order at 8), SMU filed an appeal on March 28, 2019 before the Joint Court of Justice of Aruba, Curaçao, Sint Maarten and of Bonaire, Sint Eustatius and Saba (hereinafter, "Joint Court"),[15] Case No. CUR 2019 H 0085 (the "Promissory Notes Appeal"). [16] (See Curaçao

---

[13] Exhibit 1 is the Curaçao Settlement Agreement dated February 18, 2013 and attached to the Declaration of Pieter Michiel Noordhoek in Support of Defendants' Motion to Dismiss, filed in the Florida Action, and dated August 7, 2019 ("Noordhoek Aug. 7, 2019 Decl."). (ECF No. 25)

[14] Exhibit 4 to the Noordhoek Aug. 7, 2019 Decl. is the Judgment entered by the Court of First Instance of Curacao, dated February 18, 2019, in the Curaçao Promissory Notes case. (ECF No. 25).

[15] The defendant refers to this court as the Joint Court of Justice of Aruba, Curaçao, Sint Maarten and of Bonaire, Sint Eustatius and Saba, whereas the plaintiff refers to this court as the Common Court of Appeal. The Court will refer to this court as the Joint Court.

[16] SMU filed a separate challenge to CHH's execution of the February 18, 2019 Curaçao Judgment in the Court of First Instance of Curaçao, which claim was dismissed on April 24, 2019 and CHH was allowed to execute on the judgment. (Noordhoek Aug. 7, 2019 Decl. Ex. 5, ECF No. 25).

Promissory Note Appellate Jmt., Noordhoek Decl. Ex. F[17] ¶¶ 1.1–1.2).  On appeal, SMU raised

not only claims relating to the Promissory Notes scheme but also included allegations pertaining

to the mismanagement of U.S. federal student loan funds.  Specifically in its Statement of

Appeal, SMU alleged that on December 10, 2007, defendant Scalia caused a transfer of roughly

$177,000 from an SMU LLC account in Virginia to the account of SMU NY, which was

allegedly owned by defendant Scalia.  (SMU Promissory Appeal Statement, Noordhoek Sept. 4,

2019 Ex. 1[18] at 5–6, 19, 20).  It was alleged that these funds were from Nelnet LLC, a company

that allegedly provided SMU with funds received from student loans.  (Id. at 19; see also Fla.

Compl. ¶ 50).

On July 28, 2020, the Joint Court entered judgment on the appeal, which, in part, set

aside the February 2019 judgment pertaining to the validity and enforceability of the promissory

notes.  (See Curaçao Promissory Note Appellate Jmt. ¶ 2.19).  On October 28, 2020, CHH

appealed this judgment to the Supreme Court of the Kingdom of the Netherlands in the Hague

(the "Supreme Court").  (Noordhoek Decl. Exs. G, H[19]).

After this appeal to the Supreme Court was filed (the "Hague Appeal"), SMU filed

another lawsuit in Curacao in February 2021, against CHH, captioned St. Martinus University

N.V. and International Healthcare Holding B.V. v. Caribbean Health Holding LLC, Case No.

CUR202100456.  (Noordhoek Decl. at 9 n.3).  That case allegedly relates in part to CHH's

---

[17] Composite Exhibit F to Noordhoek Decl. is a copy of the Judgment, dated July 28, 2020, entered by the Joint Court of Justice of Aruba, Curaçao, Sint Maarten and of Bonaire, Sint Eustatius and Saba.  (ECF No. 25-8).

[18] Exhibit 1 is SMU's Statement of Appeal, dated March 28, 2019 in the Promissory Notes Appeal before the Joint Court of Justice of Aruba, Curaçao, Sint Maarten and of Bonaire, Sint Eustatius and Saba, which is attached to the Supplemental Declaration of Pieter Michiel Noordhoek in Support of Defendants' Motion to Dismiss, filed in the Southern District of Florida and dated September 4, 2019 ("Noordhoek Sept. 4, 2019 Decl.").  (ECF No. 25-1).

[19] Although this Petition for Appeal and the related Complaint were not translated from Dutch to English, the Court accepts defendant's representation as to what the documents are for purposes of this procedural history.  (ECF Nos. 25-9, 25-10).  However, because they are not translated, the Court does not know what role, if any, the student loan scheme played in the appeal.

repayment of monies to SMU in connection with the promissory notes and is therefore connected to the Hague Appeal. (Id.)

On April 22, 2022, the Supreme Court dismissed the appeal on the merits without "giv[ing] reasons as to how it . . . reached its opinion" and upheld the appellate court's determination that there was insufficient evidence with which to establish the validity and enforceability of the promissory notes underlying the loans from Scalia and Walleghem. (ECF No. 30-1; see id. ¶¶ 2, 3).[20]

C. The 2015 Curaçao Omnibus Case

On February 10, 2015, SMU filed a separate action, alleging 41 claims against CHH and various defendants in the Court of First Instance of Curaçao. See St. Martinus Univ. N.V. v. Global Health Educ. Partners Ltd., Case No. AR 72274/2015 (the "2015 Curaçao Omnibus" case); (see Omnibus Petition, Noordhoek Sept. 4, 2019 Decl. Ex. 3;[21] see also Curaçao Omnibus Jmt., Noordhoek Aug. 7, 2019 Decl. Ex. 6[22]). In that case, among other things, SMU asked the court to order defendants, including CHH, to produce documents related to "tuition of students of SMU received by [defendants] and by the parties affiliated with them in Curaçao [sic] and abroad" and evidence as to how the funds were spent. (Omnibus Petition ¶ 4 (request for relief)). SMU also asked the court to declare that SMU has suffered from mismanagement, including the diversion of tuition fees and the failure to pay debts of SMU, along with allegations that defendants "fabricat[ed] all sorts of loans to SMU NV." (Id. ¶ 16 (request for relief)). In its statement of defense and counterclaim, CHH raised a counterclaim related to a different alleged

---

[20] This holding in the Hague Appeal was issued after the instant Complaint and pending motion were filed.
[21] Exhibit 3 to Noordhoek Sept. 4, 2019 Decl. is SMU's petition, dated February 10, 2015, filed in the 2015 Curaçao Omnibus case before the Court of First Instance of Curaçao. (ECF No. 25-1).
[22] Exhibit 6 to Noordhoek Aug. 7, 2019 Decl. is the Judgment, dated August 21, 2017 entered by the Court of First Instance of Curaçao in the 2015 Curaçao Omnibus case. (ECF No. 25).

student loan scheme occurring after October 22, 2010.  CHH alleged that the majority

shareholders of SMU, who are not parties to this action, fraudulently maintained tuition fees

from abroad students in bank accounts in the United States and India instead of transferring them

to Curaçao.  (Omnibus Statement of Defense, Noordhoek Sept. 4, 2019 Ex. 4[23] ¶¶ 5.1– .6).  In

August 2017, the court dismissed all of SMU's claims against CHH, including those pertaining

to the mismanagement of SMU and diversion of tuition fees, but granted CHH's counterclaims

against SMU.  (Curaçao Omnibus Jmt. ¶¶ 3.15, 3.18, 3.24, 4.11–.18).

     SMU filed an appeal from the August 2017 decision in the 2015 Curaçao Omnibus

Action, reframing their claims against CHH around SMU's need for documentation related to

CHH's status as a shareholder and challenging the lower court's decision to allow CHH's

counterclaims to proceed (the "Omnibus Appeal").  (SMU Omnibus Appeal Statement,

Noordhoek Sept. 4, 2019 Ex. 5[24] ¶¶ 5–8).  On July 28, 2020, the Joint Court entered a judgment

in the Omnibus Appeal, dismissing SMU's reformulated claims and rejecting CHH's underlying

counterclaim, but granting CHH's new counterclaim to enforce the Curaçao Settlement

Agreement against SMU for failing to recognize CHH as a shareholder in these proceedings.

(Omnibus Appellate Decision, Noodhoek Decl. Ex. E[25] ¶¶ 2.3, 2.7, 2.10, 2.11, 2.12, 2.17, 2.19,

2.20).

---

[23] Exhibit 4 to Noordhoek Sept. 4, 2019 Decl. is CHH's Statement of Defense and Counterclaim dated September 14, 2015 filed in the 2015 Curaçao Omnibus case before the Court of First Instance of Curaçao.  (ECF No. 25-2).
[24] Exhibit 5 to the Noodhoek Sept. 4, 2019 Decl. is SMU's Appellants' Brief, dated November 9, 2017, filed in the Omnibus Appeal before the Joint Court of Justice of Aruba, Curaçao, Sint Maarten and of Bonaire, Sint Eustatius and Saba.  (ECF No. 25-2).
[25] Composite Exhibit E to the Noordhoek Decl. is the Judgment, dated July 28, 2020, in the Omnibus Appeal entered by the Joint Court of Justice of Aruba, Curaçao, Sint Maarten and of Bonaire, Sint Eustatius and Saba.  (ECF No. 25-7).

D. <u>The Florida Action</u>

On June 4, 2019, SMU filed an action in the United States District Court for the Southern District of Florida against defendants Scalia, CHH, and Walleghem, captioned <u>St. Martinus University, N.V. v. Caribbean Health Holding LLC</u>, No. 19 CV 22278 (S.D. Fla. June 4, 2019) (the "Florida Action"). The complaint alleged claims of conversion against Scalia and Walleghem, unjust enrichment, fraud, conspiracy to commit fraud, violation of the Florida Criminal Practices Act, and embezzlement and a claim for declaratory relief. (Fla. Compl. ¶¶ 105–39; <u>see also</u> Fla. Order[26] at 2). Specifically, in its second amended complaint in the Florida Action, SMU alleged that Scalia and Walleghem made personal loans to SMU from December 13, 2007 through February 14, 2008 in the amount of roughly $180,000, and that on December 12, 2007, Scalia caused SMU Board Member Roger Courtney to improperly transfer $177,000 of U.S. federal student loan funds from SMU LLC Virginia to SMU NY. (Fla. Compl. ¶¶ 22, 50). With respect to those student loan funds, SMU alleged that "[b]y September 10, 2015, Courtney had learned that the funds were not made available to SMU in Curaçao for their intended purposes, as per SMU's agreement with Nelnet, or otherwise provided to SMU." (<u>Id.</u> ¶ 51).

In its Order granting defendants' motion to dismiss, the court in the Florida Action recounted in detail the background of the disputes and the prior litigation in Curaçao. (Fla. Order at 7–10). The court dismissed the claims against defendant Scalia, a New York resident, finding no basis on which to exercise either general or personal jurisdiction over him in Florida. (<u>Id.</u> at 17–22).

---

[26] As noted in footnote 12 <u>supra</u>, the District Court entered an Order on February 27, 2020, dismissing the action in its entirety. <u>See</u> <u>St. Martinus Univ., NV v. Caribbean Health Holding, LLC</u>, No. 19 CV 22278, 2020 WL 956301 (S.D. Fla. Feb. 27, 2020).

The court in the Florida Action, applying an international abstention analysis, also found that because both the allegations relating to SMU's membership interest claim and the Promissory Notes scheme were the subject of foreign judgments or parallel legal proceedings in Curaçao, comity, fairness and efficiency favor abstention from the exercise of jurisdiction in Florida.  (Id. at 22–29).  With respect to the allegations relating to defendants' student loan scheme, the court noted that it was unclear to what extent the student loan allegations were included as part of the foreign judgments and parallel legal proceedings.  (Id. at 29).  The court concluded, however, that the student loan scheme allegations "are entangled with the Promissory Notes dispute and have been introduced in an ongoing Curaçaoan proceeding."  (Id. at 30).  Referring to its earlier analysis finding that there was "no reason to find that the Curaçaoan judicial system is incompetent, has engaged in fraud, or that its ongoing jurisdiction over the Promissory Notes Appeal would be 'prejudicial, in the sense of violating American public policy,'" the court again found abstention to be appropriate as to the student loan claims as well.  (Id. at 30–31 (quoting Turner Ent. Co. v. Degeto Film GmbH, 25 F.3d 1512, 1519 (11th Cir. 1994))).

In addition, attached to the second amended complaint in the Florida Action, SMU filed a copy of the 2007 SMU Shareholders' Agreement.  (2007 Shareholders' Agreement, Noordhoek Decl. Ex. D[27]).  According to the terms of the Agreement, the 2007 SMU Shareholders Agreement governs disputes arising out of or in connection with the Agreement and governs the liabilities of and payments from SMU.  (2007 Shareholders' Agreement §§ 1.9, 1.10, 1.14, 3.1, 3.2).  The Agreement provides that it is governed by Curaçaoan law and contains a mandatory forum selection clause in the Court of First Instance in Curaçao.  (Id. §§ 3.1, 3.2).

---

[27] Exhibit D to the Noordhoek Decl. is the "Shareholders [sic] Agreement" dated December 20, 2007.  (ECF No. 25-6).

SMU also attached to the second amended complaint in the Florida Action a copy of the 2010 SMU Shareholders' Agreement. (S.D. Fla. Dkt No. 19 CV 22278, ECF No. 40-3). In examining that Agreement, the Florida court noted that the 2010 Shareholders' Agreement similarly contains a choice-of-law provision that favors "'Curaçao, member of the Kingdom of the Netherlands,' and a venue selection clause stating '[a]ny differences arising out of this Agreement or any other future agreements resulting here from [sic] shall be exclusively submitted to the Court of [F]irst [I]nstance of Curaçao.'" (Fla. Order at 31–32 (quoting 2010 SMU Shareholders' Agreement §§ 6.3, 6.5)). The court found that the allegations in the complaint relating to defendants' shares in SMU and the shareholder loans all arose out of the 2010 Shareholders' Agreement and therefore fell within the venue selection clause. (Id. at 32).

As for the student loan scheme allegations, the court found that even if they fell outside the scope of the 2010 Shareholders' Agreement, the *forum non conveniens* analysis favored Curaçao. (Id.) As the court explained, the case was "essentially a Curaçaoan matter," noting that plaintiff SMU was a Curaçaoan company and the Promissory Notes scheme, along with the issue of membership in SMU, were already the subject of proceedings, including several appeals, in Curaçao. (Id. at 33). In addition, the court noted that because of the lengthy procedural history of the various cases, the courts in Curaçao were much more familiar with the allegations and had an interest in continuing to adjudicate the claims by a Curaçaoan plaintiff. (Id.) Although the Florida court noted that it might be easier to obtain evidence in New York with respect to the student loan allegations, the court also noted that those claims had already been presented to the Curaçaoan courts in connection with the Promissory Notes Appeal.[28] (Id. at 33–

---

[28] The court also noted that because it had dismissed the action against defendant Scalia for lack of personal jurisdiction, "Plaintiff would be unable to litigate the Student Loan Allegations here without a necessary party." (Fla. Order at 34).

34).  The court concluded that while the location of evidence was one factor to be considered, "[e]fficiency would dictate these allegations should be addressed where they were first presented."  (Id. at 34).  Based on this analysis, the court dismissed the Florida Action in its entirety on February 27, 2020.

On March 26, 2020, SMU filed a motion for reconsideration in the Florida Action, arguing that there were two fatal errors with the Order: 1) that the court incorrectly concluded that plaintiff litigated the student loan scheme in the Promissory Notes Appeal, and 2) that the court incorrectly evaluated the issue of *forum non conveniens*.  (Fla. Reconsideration Order, Guzov Decl. Ex. 2[29] at 2–3).  In denying the motion for reconsideration on April 30, 2020, the court in the Florida Action made clear that it did not hold that the student loan scheme had been litigated but that it was *entangled* with the Promissory Notes scheme.  (Id. at 3–4).

Thereafter, SMU commenced the instant action in New York.

<u>DISCUSSION</u>

I.      <u>EXTRINSIC EVIDENCE</u>

At the outset, the Court notes that both parties have submitted hundreds of pages of declarations and exhibits in support of their respective motion papers.  Since this motion was filed as a motion to dismiss based on the allegations in the Complaint, the Court must first determine whether to consider this extrinsic evidence and treat the motion as one for summary judgment or not consider any of this additional evidence.  Rule 12(d) of the Federal Rules of Civil Procedure cautions that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for

---

[29] Exhibit 2 to the Guzov Decl. is the Order of the district court, dated April 30, 2020, in <u>St. Martinus University, N.V. v. Caribbean Health Holding, LLC</u>, No. 19 CV 22278 (S.D. Fla.), denying SMU's Motion for Reconsideration. (ECF No. 24-5).

summary judgment." Fed. R. Civ. P. 12(d). If the court decides to consider such materials, Rule

12(d) further instructs that "[a]ll parties must be given a reasonable opportunity to present all the

material that is pertinent to the motion." Id.

In considering a motion to dismiss, courts may take into account the following categories

of documents:

> (1) facts alleged in the complaint and documents attached to it or
> incorporated in it by reference, (2) documents "integral" to the
> complaint and relied upon in it, even if not attached or
> incorporated by reference, (3) documents or information contained
> in defendant's motion papers if plaintiff has knowledge or
> possession of the material and relied on it in framing the
> complaint, (4) public disclosure documents required by law to be,
> and that have been, filed with the Securities and Exchange
> Commission, and (5) facts of which judicial notice may properly
> be taken under Rule 201 of the Federal Rules of Evidence.

In re Merrill Lynch & Co., Inc., 273 F. Supp. 2d 351, 356–57 (S.D.N.Y. 2003) (internal

footnotes omitted), aff'd sub nom. Lentell v. Merrill Lynch & Co., 396 F.3d 161 (2d Cir. 2005),

cert. denied, 546 U.S. 935 (2005); see also Van Bourgondien-Langeveld v. Van Bourgondien,

No. 10 CV 77, 2010 WL 5464890, at *3 (E.D.N.Y. Dec. 29, 2010) (quoting same).

With respect to the third category of documents that a court may consider, the Second

Circuit has explained that such documents may be considered "when a plaintiff chooses not to

attach to the complaint or incorporate by reference a [document] upon which it solely relies and

which is integral to the complaint." Cortec Indus., Inc. v. Sum Holding L.P., 949 F. 2d 42, 47

(2d Cir. 1991). In those circumstances, "the defendant may produce the [document] when

attacking the complaint for its failure to state a claim, because plaintiff should not so easily be

allowed to escape the consequences of its own failure." Id. (allowing consideration of

documents filed by defendant in moving to dismiss that were not attached to or incorporated by

reference in the complaint, where the plaintiff had notice of these documents and they were

integral to its complaint).  In those situations, when defendant attaches documents to its motion papers that plaintiff had notice of and that plaintiff relied on when creating the complaint, the concerns which motivate converting a Rule 12(b)(6) motion into a Rule 56 motion are "largely dissipated."  Id. at 48.

In addition, "[c]ourts have recognized that 'it is proper to consider public documents on a motion to dismiss to determine whether claims are barred by prior litigation.'"  Lateral Recovery, LLC v. Capital Merch. Servs., LLC, No. 21 CV 9336, 2022 WL 4815615, at *20 (S.D.N.Y. Sept. 30, 2022) (quoting Cowan v. Ernest Cordelia, P.C., No. 98 CV 5548, 2001 WL 856606, at *1 (S.D.N.Y. July 30, 2001)); Barnes v. New York State Div. of Human Rts., No. 14 CV 2388, 2016 WL 110522, at *2 n.4 (S.D.N.Y. Jan. 8, 2016) (explaining that "[b]ecause defendants oppose plaintiff's motion on the grounds of futility and raise the defenses of collateral estoppel and res judicata, the court may consider plaintiff's proposed amended complaint, the documents attached thereto, documents of which judicial notice may be taken, including state court and agency records and decision, and documents which are integral to the claims") (collecting cases); Reyes v. Fairfield Props., 661 F. Supp. 2d 249, 277 (E.D.N.Y. 2009) (explaining that "in evaluating the *res judicata* effect of a prior action, 'courts routinely take judicial notice of documents filed in other courts, again not for the truth of the matter asserted in the other litigation, but rather to establish the fact of such litigation and related filings'") (quoting Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991)).

In this case, defendant argues that since a critical issue is whether plaintiff's claims are time barred and plaintiff has failed to allege the date of the student loan transaction that is at the heart of the Complaint, it is necessary for the Court to refer to the plaintiff's pleadings in other cases where these dates have been alleged.  (Def.'s Mem. at 3).  Moreover, defendant argues that

the Court may consider the holdings in other filed cases in order to consider the issues of collateral estoppel, international comity, and *forum non conveniens.* (Id.) By contrast, plaintiff argues that the Court should confine itself to the Complaint and refrain from considering defendant's defenses as they may require a review of the merits. (Pl.'s Resp. at 9). Plaintiff also argues that defendant's declarations and affidavits are improper for the Court to consider at this juncture. (Id. at 9 & n.9 (citing Graham Hanson Design LLC v. 511 9th LLC, No. 10 CV 5493, 2011 WL 744801 (S.D.N.Y. Feb. 24, 2011))).

The Court declines to convert this motion into a motion for summary judgment, and neither party has suggested it should. However, as the Second Circuit held in Cortec, "plaintiff should not so easily be allowed to escape the consequences of its own failure" to provide this Court with critical information about its claims. Cortec Indus., Inc. v. Sum Holding L.P., 949 F. 2d at 47. When preparing this Complaint, plaintiff clearly knew of, possessed, and relied on information about this controversy that was set out in its prior filings, prior exhibits attached to those filings, and the prior, related court decisions. Nonetheless, it appears that in drafting the Complaint in this case, plaintiff deliberately omitted critical information about its claims in an attempt to evade scrutiny of its claims and impede an analysis of the timeliness of the claims and the possible collateral estoppel effect of other judgments. The court filings in the related cases in Curaçao and the District Court in the Southern District of Florida are integral to this Court's analysis of the motion to dismiss because plaintiff indisputably had notice of their contents and relied on the litigation history in framing its Complaint, both in the material it omitted and in its allegation that it only "recently uncovered fraud" after a court decision in Curaçao which prompted the filing of this action. (Compl. ¶ 13).[30]

---

[30] Paragraph 13 reads: "No proof has ever been submitted regarding funds loaned directly to SMU, rather, the recent resolution of a dispute in Curaçao revealed that Defendants were not only unable to establish loans were made to

Therefore, the Court may properly consider those documents – namely, the prior court filings and court opinions – in order to understand the prior litigation history and to better comprehend what the plaintiff is alleging in this case.  Neither party has challenged the authenticity or relevance of these filed documents, see United States ex rel. Foreman v. AECOM, 19 F.4th 85, 106 (2d Cir. 2021),[31] and the Court has not considered the factual recitations contained in counsel's declarations, but only cites to the exhibits attached to those declarations that are additional court rulings and filings related to the case history of this matter.

## II.    MOTION TO DISMISS PLAINTIFF'S COMPLAINT AS UNTIMELY

Defendant Scalia, a former shareholder of SMU, moves to dismiss the Complaint in its entirety, asserting that the facts underlying each of the three causes of action set out in the Complaint occurred in 2007–2008 and thus, are barred by the relevant statute of limitations. (Def.'s Mem. at 10–13).  "Granting a motion to dismiss on the basis of a lapsed limitations period is proper when it is clear on the face of the complaint that a claim is untimely."  Mendez v. NYC Dep't of Educ., No. 18 CV 5894, 2020 WL 1042641, at *5 (E.D.N.Y. Mar. 4, 2020) (quoting Wallace Wood Props., LLC v. Wood, 669 F. App'x 33, 34 (2d Cir. 2016), as amended (Nov. 17, 2016)); see also Ortiz v. City of New York, 755 F. Supp. 2d 399, 401–02 (E.D.N.Y. 2010).  On a motion to dismiss, "Defendants, not Plaintiff[s], bear the burden of proof on the affirmative defense of the statute of limitations."  Wu v. Bitfloor, Inc., 460 F. Supp. 3d 418, 425 (S.D.N.Y. 2020) (quoting Pearce v. Manhattan Ensemble Theater, Inc., 528 F. Supp. 2d 175, 182 (S.D.N.Y. 2007)).

SMU, but also, the Curacao [sic] court clarified that alleged portions of those funds would have went [sic] to SMU NY and not SMU to its benefit."

[31] "'[E]ven if a document is "integral" to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document,' and it must be clear that 'there exist no material disputed issues of fact regarding the relevance of the document.'"  United States ex rel. Foreman v. AECOM, 19 F.4th 85, 106 (2d Cir. 2021) (quoting DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010)).

A. Statute of Limitations and Conversion

Under New York law, [32] the statute of limitations for a conversion claim is three years. N.Y. C.P.L.R. 214(3). Defendant contends that plaintiff's conversion claim is barred by the three-year statute of limitations. (Def.'s Mem. at 12–13).

Looking first at the allegations of the Complaint in this action, plaintiff alleges that "Scalia and/or SMU N.Y. received specific funds due to SMU," and that "[i]n transferring valuable assets and business opportunities of SMU," for "zero or grossly insufficient consideration," defendants unlawfully converted those assets and opportunities for their own personal benefit. (Compl. ¶¶ 18–19). Although the Complaint does not specify when this conversion allegedly occurred nor does it detail what "specific funds due to SMU" were converted, [33] the only relevant funds referenced in the Complaint appear to be the "student loan funds received by SMU N.Y." (Id. ¶ 16). According to the Complaint, "Scalia, issued or caused to issue, wire transfers of at least $177,000.00 to SMU N.Y.'s bank account under the control of Scalia, of student loan proceeds paid to SMU by Nelnet." (Id. ¶ 27).

Although the instant Complaint fails to specifically allege when the student loan transfers that are arguably the subject of both the conversion and unjust enrichment[34] claims were made, the plaintiff, in its response to the Motion to Dismiss, asserts that "the single wire transfer of

[32] The Court acknowledges that if the 2007 Shareholder Agreement applies to plaintiff's claims, it specifies that the law of Curaçao governs. Since neither party has provided the Court with case authority under Curaçaoan law, the Court has reviewed the claims under New York law for the purpose of reviewing the motion to dismiss. As noted infra at 38–42, the designation of Curaçaoan law is one factor in the *forum non conveniens* analysis that cautions in favor of allowing the courts in Curaçao to decide these claims.

[33] In plaintiff's response in opposition to defendant's motion to dismiss, plaintiff clarifies that the funds converted are those "proceeding from certain U.S. student loans are and have been under the unauthorized dominion and control of Defendant SMU LLC, by the actions of its only principal, Defendant Scalia." (Pl.'s Resp. 18).

[34] See discussion infra at 21–24.

$177,500.25 . . . occurred in 2007."[35]  (Pl.'s Resp. at 5).  This is consistent with plaintiff's

allegation in the Florida second amended complaint that "[o]n or about December 12, 2007,

Courtney, at the direction of Scalia, issued a wire transfer of $177,000 of US Federal Student

Loans from SMU LLC Virginia to SMU LLC New York's bank account."  (Def.'s Mem. at 12,

n.17 (citing Fla. Compl. ¶ 50)).  The reference in the instant Complaint to the $177,000 in wire

transfers of student loan proceeds (Compl. ¶ 27), is consistent with the plaintiff's allegations in

the Florida Action, and refers to the same transaction which plaintiff claimed in the Florida

Action occurred in 2007.  Given that this transaction occurred 13 years before this action was

commenced, the conversion claim is plainly barred by the statute of limitations.

Plaintiff does not dispute that its claims relate to the same student loan wire transfer

alleged in the Florida Action to have occurred in 2007.[36]  Instead, it argues that its time to bring

this claim should be extended under New York's "discovery rule," which refers to the general

rule under New York law that allows plaintiffs to bring common law fraud claims within two

years from the date that the plaintiff discovered or reasonably could have discovered the fraud.

Baiul v. William Morris Agency, LLC, No. 13 CV 8683, 2014 WL 1804526, at *9 (S.D.N.Y.

May 6, 2014), aff'd, 601 F. App'x 58 (2d Cir. 2015) (summary order).  However, it is well

established that the discovery rule does not apply to conversion claims and thus, the statute of

limitations runs from the date of the actual conversion, "regardless of when the conversion is

discovered."  See id. at *11 (explaining that "[u]nder New York law, the statute of limitations for

conversion is three years, which begins to run 'at the moment of conversion, regardless of when

---

[35] At times in its filings before this Court and in prior litigation, plaintiff identifies the amount of the student loan transfer as $177,500.25 and at other times it rounds to $177,000; although the amount differs slightly, the references are clearly to the same transaction.

[36] Of note, although plaintiff objected to the Court's consideration of extrinsic evidence, plaintiff submitted copies of the wire transfer confirmation of the student loan funds totaling $177,500.25, in support of its opposition to the motion to dismiss.  This wire transfer confirmation indicates that the date of the transfer was on or about December 10, 2007.  (ECF No. 27-1).  This is consistent with the allegations in the Florida Action.

the conversion is discovered'") (quoting <u>Lennon v. Seaman</u>, 63 F. Supp. 2d 428, 440 (S.D.N.Y. 1999), <u>abrogated on other grounds</u>, <u>Reed Elsevier, Inc. v. Muchnick</u>, 559 U.S. 154 (2010)); <u>Aleem v. Experience Hendrix, LLC</u>, No. 16 CV 9206, 2017 WL 3105870, at *6 (S.D.N.Y. July 20, 2017) (explaining that "[a] cause of action for conversion ordinarily accrues immediately upon the wrongful exercise of dominion over another's property" or "[w]here the original possession is lawful, a conversion does not occur until the defendant refuses to return the property after demand or until he sooner disposes of the property") (quoting <u>Seanto Exports v. United Arab Agencies</u>, 137 F. Supp. 2d 445, 451 (S.D.N.Y. 2001)); <u>Calcutti v. SUB, Inc.</u>, 224 F. Supp. 2d 691, 702 (S.D.N.Y. 2002) (holding "[g]enerally, the statute of limitations for a conversion claim begins to run when the conversion occurs and not when the conversion is discovered or when plaintiff exercises diligence to discover it").

Accordingly, it is respectfully recommended that the plaintiff's conversion claim be dismissed as beyond the statute of limitations

B.  <u>Statute of Limitations and Unjust Enrichment</u>

Defendant also seeks to dismiss plaintiff's claim of unjust enrichment as also barred by the statute of limitations.

In connection with plaintiff's unjust enrichment claim, plaintiff appears to allege that defendant Scalia wrongfully retained student loan proceeds that should have gone to SMU and thus, Scalia was unjustly enriched.  (Compl. ¶ 23).  To the extent that the unjust enrichment claim relies on the allegation that Scalia was unjustly enriched for retaining the student loan proceeds and failing to transmit them to SMU, this claim, like the conversion claim, is untimely.

The statute of limitations for unjust enrichment claims seeking equitable relief is six years, but it is only three years when the plaintiff is seeking monetary damages.  <u>839 Cliffside</u>

Ave. LLC v. Deutsche Bank Nat. Trust Co., No. 15 CV 4516, 2016 WL 5372804, at *7 (E.D.N.Y. Sept. 26, 2016); Matana v. Merkin, 957 F. Supp. 2d 473, 494 (S.D.N.Y. 2013) (explaining that under New York law, "the limitations period [for an unjust enrichment claim] is six years where plaintiff seeks an equitable remedy, but three years where plaintiff seeks monetary damages"); Lia v. Saporito, 909 F. Supp. 2d 149, 167 (E.D.N.Y. 2012), aff'd, 541 F. App'x 71 (2d Cir. 2013) (same); but see City of Almaty v. Sater, 503 F. Supp. 3d 51, 64–66 (S.D.N.Y. 2020) (describing a split among the intermediate New York appellate courts under what circumstances to apply the six or three year statute of limitations period to an unjust enrichment claim).

Moreover, the Second Circuit has held that the two-year discovery rule for extending the statute of limitations in fraud claims does not apply to unjust enrichment claims. Cohen v. S.A.C. Trading Corp., 711 F.3d 353, 364 (2d Cir. 2013) (explaining that "[u]nder New York law, the six-year limitations period for unjust enrichment accrues 'upon the occurrence of the wrongful act giving rise to a duty of restitution and not from the time the facts constituting the fraud are discovered'") (quoting Coombs v. Jervier, 74 A.D.3d 724, 724, 906 N.Y.S.2d 267, 269 (2d Dep't 2010)); accord Jacobs v. Halper, 116 F. Supp. 3d 469, 480 (E.D. Pa. 2015) (explaining that "New York's discovery rule does not apply to . . . unjust enrichment claims"). Instead, the limitations period "'begins to run upon the occurrence of the wrongful act giving rise to a duty of restitution,' or 'when a defendant accepts the benefits bestowed upon him.'" Lia v. Saporito, 909 F. Supp. 2d at 167 (internal citations omitted) (quoting Cohen v. Cohen, 773 F. Supp. 2d 373, 397 (S.D.N.Y. 2011), abrogated on other grounds sub nom. Cohen v. S.A.C. Trading Corp., 711 F.3d 353 (2d Cir. 2013), and L.I. Head Start Child Dev. Servs. v. Economic Opportunity Comm'n of Nassau Cnty., 558 F. Supp. 2d 378, 409 (E.D.N.Y. 2008)).

Given that the statute of limitations for an unjust enrichment claim such as this, where plaintiff is seeking monetary damages, is three years in New York, the student loan transfer which took place in December 2007 is clearly beyond the three-year period when the instant Complaint was filed. Even if plaintiff were seeking an equitable remedy, the six-year statute of limitations would have long expired as well.

In attempting to interpret plaintiff's Complaint, defendant has also analyzed plaintiff's unjust enrichment claim as if it were based on plaintiff's Promissory Notes scheme allegations, in which it is alleged that defendants "knowingly accepted a benefit, including the repayment of alleged 'loan' to SMU" and that it "[i]t would be inequitable for the Defendants to retain the benefit of repayment of a loan SMU never received." (Compl. ¶¶ 23, 25). However, plaintiff's Memorandum in response to the motion to dismiss asserts that the unjust enrichment claim is not based on the alleged "loan" to SMU and that defendant's reliance on the alleged loan is misplaced. Specifically, plaintiff asserts in its response that "Defendant conveniently chose to misconstrue language [sic] Plaintiff's Complaint in an attempt to commingle the 2015 Promissory Note issue with the student loan fraud in a feeble attempt to create the appearance of a connection between Curaçao's 2015 Promissory Note Case and this U.S. Student Loans case." (Pl.'s Resp. at 7). Plaintiff criticizes defendant for construing the word "loans" in the Complaint to refer to the Promissory Note scheme, when plaintiff asserts that its unjust enrichment claim – indeed, the entire Complaint in this action – relates only to the student loans issue. (Id. at 3, 7).

As noted, however, plaintiff's Complaint contains an allegation that "on or around December 2007 and February 2008, Defendant Scalia allegedly provided loans to SMU." (Compl. ¶ 12; see also ¶¶ 23, 25). Thus, regardless of plaintiff's current position on this motion to dismiss, the Complaint clearly references something other than the "student loans" and it is

understandable that defendant may have misconstrued plaintiff's intended pleading. However, whether the unjust enrichment claim is based on the loans to SMU that were alleged to have been made "on or around December 2007 and February 2008" or on the student loan transfer that occurred in December 2007, more than three years, or even six years, have passed before the instant action was filed. Thus, the plaintiff's unjust enrichment claim is also time barred.

C. Statute of Limitations and Fraud

Defendant Scalia also moves to dismiss plaintiff's fraud claim as also barred by the statute of limitations. (Def.'s Mem. at 11–12).

Under New York law, fraud claims must be commenced within six years from the accrual of the claim or two years from the time plaintiff could have discovered the fraud, whichever is later. N.Y. C.P.L.R. 213(8); see Stull v. Bayard, 561 F.2d 429, 432 (2d Cir. 1977) (holding that a fraud claim accrues when "the plaintiff suffers a loss as a result ["of the fraudulent act"]; i.e., when a plaintiff with assumed knowledge of the fraudulent wrong may assert a claim for relief") (internal citation omitted); see also Coleman v. Wells Fargo & Co., 125 A.D.3d 716, 716, 4 N.Y.S.3d 93, 94 (2d Dep't 2015) (explaining that "[a] cause of action based upon fraud accrues, for statute of limitations purposes, at the time the plaintiff 'possesses knowledge of facts from which the fraud could have been discovered with reasonable diligence'") (quoting Town of Poughkeepsie v. Espie, 41 A.D.3d 701, 705, 840 N.Y.S.2d 600, 603 (2d Dep't 2007)).

The fraud count in the Complaint appears to be based upon the transfer by Scalia of roughly $177,000 in student loan funds which SMU alleges were "never released by Scalia or SMU N.Y. to SMU or used for SMU's legitimate purposes." (Compl. ¶¶ 27, 29). As noted, the Complaint does not contain any specific dates as to when these funds were allegedly received by Scalia, when they should have been released to SMU, or even when SMU discovered that the

funds had not been transferred. In plaintiff's response to the Motion to Dismiss, however, plaintiff indicates that "on or about 2018, SMU learned that Scalia instructed SMU to wire such student loan funds under special instructions. . . . Upon learning such, SMU initiated a timely, *separate and distinct* [sic] relief against CHH. This prompted the 2019 Florida Case Lawsuit," in which Scalia was also named as a defendant. (Pl.'s Resp. at 5) (internal footnotes omitted).

In the Florida Action, filed on June 4, 2019, plaintiff alleged that the transfer of $177,000 in student loan funds occurred "[o]n or about December 12, 2007." (Fla. Compl. ¶ 50). In the absence of any allegations in the instant Complaint to the contrary,[37] the six-year statute of limitations on a fraud claim that arose from conduct in December 2007 has expired.

To the extent that plaintiff is seeking to use the discovery rule and count the statute of limitations from the date plaintiff discovered the fraud, the claim is still barred for a number of reasons. Plaintiff contends that it "did not discover Defendant's fraud until July 28, 2020, when the [Joint Court in the Promissory Notes Appeal] pointed out in a judgment that SMU LLC was not a subsidiary of SMU and was a wholly separate entity unrelated to SMU." (Pl.'s Resp. at 14). Nowhere in the Complaint does plaintiff explain how it could not possibly have known prior to July 28, 2020, that SMU NY was not its own subsidiary, nor does plaintiff allege how learning that fact about the relationship led to the discovery of the student loan scheme.[38]

More importantly, plaintiff contradicts its own claim that it was unaware of this relationship until July 28, 2020, by acknowledging that prior to the court's ruling, "such

---

[37] Nor for that matter does plaintiff advance any argument suggesting that the loans occurred at some other time in either its responsive Memorandum or in plaintiff's counsel's declaration.
[38] The Complaint is very unclear on this point. Plaintiff explains that "the Curacao court clarified that alleged portions of those [fraudulent loan] funds would have went to SMU NY and not SMU to its benefit" and "[t]he recently uncovered fraud has prompted Plaintiff to file this action against those that have received funds in place of SMU." (Compl. ¶¶ 14–15).

relationship was disavowed." (Id.)[39]  Indeed, plaintiff alleged as much in its statement of appeal submitted in the 2015 Curaçao Omnibus case, dated March 28, 2019, where it alleged: "SMU L.L.C. New York is **NOT** a subsidiary of SMU N.V. or a shareholder of SMU N.V."[40]  (SMU Promissory Appeal Statement ¶ 1.2.2) (emphasis in original).  Apart from being aware that SMU LLC NY was not a subsidiary of SMU as early as its March 2019 filing in the Curaçao Omnibus appeal, plaintiff explicitly alleged in the Florida pleadings that SMU Board Member Roger Courtney issued the wire of student loan funds in the amount of $177,000 from SMU LLC Virginia to SMU NY, and that "[b]y September 10, 2015, Courtney had learned that the funds were not made available to SMU in Curaçao for their intended purposes."  (Fla. Compl. ¶¶ 50, 51).  Thus, plaintiff's own prior pleadings demonstrate clearly that SMU knew of the fraud as early as 2015.

Plaintiff's argument that it did not know of the fraud until July 28, 2020 when the Joint Court indicated in a judgment that it had not been proven that SMU NY was a subsidiary of SMU (Pl.'s Resp at 14 & n.11), is belied by plaintiff's own filing with the Joint Court dated March 28, 2019, its representations in its response to the motion to dismiss, and in its representations in the Florida Action.

Even if the Court were to ignore all of plaintiff's prior pleadings and representations in other courts clearly raising these student loan fraud claims and credit plaintiff's argument that it did not learn of the transfer of the student loans until it signed its petition for appeal on March

---

[39] Plaintiff also contradicts itself in the response to the Motion to Dismiss by stating that it learned "on or about 2018" that Scalia caused the student loan transfer. (Pl.'s Resp. at 5).  This recounting, however, is itself contradicted by plaintiff's Florida Complaint, in which plaintiff alleged that "[b]y September 10, 2015, [a SMU Board member] had learned that the [student loan] funds were not made available to SMU in Curaçao for their intended purposes." (Fla. Compl. ¶¶ 51).
[40] What also makes this argument particularly disingenuous is that the plaintiff again specifically alleged this in its second amended complaint in Florida Action, claiming that that SMU NY was not "registered to, owned by, or had any relation or affiliation to SMU in Curaçao," which was filed in October 2019, before the July 28, 2020 Joint Court finding. (Fla. Compl. ¶ 48).

28, 2019, the claims in the instant Complaint, filed April 8, 2021, would still be time barred by approximately ten days, under the two-year statute of limitations that would apply to the discovery of fraud.

### D. Equitable Tolling

Given that the Court finds that the statute of limitations on all of plaintiff's claims have expired, plaintiff would need to demonstrate that equitable tolling was warranted to revive its claims. Plaintiff urges the Court to apply the doctrine of equitable tolling to suspend the limitations periods at issue. (Pl.'s Resp. at 14). Plaintiff argues that the Court should toll the limitations period until the time that the Joint Court issued its ruling distinguishing between SMU and SMU LLC. (Id.)

The doctrine of equitable estoppel or equitable tolling only should apply when there are "extraordinary circumstances" present that would excuse a claimant's failure to comply with the requirement to commence suit within the applicable limitations period. See Dillman v. Combustion Eng'g, Inc., 784 F.2d 57, 60 (2d Cir. 1986); see also Vincent v. Money Store, 304 F.R.D. 446, 458 (S.D.N.Y. 2015); Levy v. Aaron Faber, Inc., 148 F.R.D. 114, 119 (S.D.N.Y. 1993). Equitable tolling based on a defendant's concealment of the underlying fraud or conspiracy may be warranted if the plaintiff establishes that 1) the defendant concealed the existence of the cause of action from him; 2) the plaintiff remained ignorant of the claim until sometime within the statute of limitations period; and 3) his continuing ignorance was not due to lack of diligence on his part. State of N.Y. v. Hendrickson Bros., Inc., 840 F.2d 1065, 1083 (2d Cir. 1988); In re Issuer Plaintiff Initial Pub. Offering Antitrust Litig., No. 00 CV 7804, 2004 WL 487222, at *3 (S.D.N.Y. Mar. 12, 2004). It is plaintiff's burden to demonstrate the elements of fraudulent concealment with particularity. See In re Nine West Shoes Antitrust Litig. 80 F.

Supp. 2d 181, 192 (S.D.N.Y. 2000) (citing <u>Donahue v. Pendleton Woolen Mills, Inc.</u>, 633 F.

Supp. 1423, 1443 (S.D.N.Y. 1986), <u>abrogated on other grounds</u>, <u>State Oil Co. v. Khan</u>, 522 U.S.

3 (1997)).

Plaintiff asserts that defendant "Scalia concealed the existence of the transfers of student

loan funds to SMU LLC by misrepresenting to the Curaçao courts that SMU LLC was a

subsidiary of SMU," and further delayed through litigation SMU's attempts to retrieve

documents relating to SMU.  (Pl.'s Resp. at 15).  Plaintiff claims that SMU was "unaware of

various fraudulent conduct dating back to 2007" which caused plaintiff to seek documents "to

determine the extent of the fraud" in the 2015 Curaçao Omnibus case.  (<u>Id.</u>)  Plaintiff further

claims that its efforts to obtain discovery in the Florida case were "sandbagged by Defendant

Scalia's jurisdictional challenges."  (<u>Id.</u> at 16).  Thus, plaintiff claims that the statute of

limitations should be tolled.

In the Second Circuit, a plaintiff may "prove concealment by showing *either* that the

defendants took affirmative steps to prevent plaintiff['s] discovery of the conspiracy, or that the

conspiracy itself was inherently self-concealing."  <u>In re Issuer Plaintiff Initial Pub. Offering</u>

<u>Antitrust Litig.</u>, 2004 WL 487222, at *4 (quoting <u>In re Nine West Shoes Antitrust Litig.</u> 80 F.

Supp. 2d at 192 (citing <u>State of N.Y. v. Hendrickson, Bros., Inc.</u>, 840 F.2d at 1083)); <u>see also</u>

<u>Vincent v. Money Store</u>, 304 F.R.D. at 458–59 (explaining that "[b]ecause accomplishing those

[self-concealing] schemes require affirmative acts of concealment, the plaintiffs in those cases do

not need to show additional 'independent affirmative steps' of concealment") (quoting <u>In re</u>

<u>Issuer Plaintiff Initial Pub. Offering Antitrust Litig.</u>, 2004 WL 487222, at *4).

As addressed in some detail above, not only has plaintiff failed to detail any clear overt

acts that defendant Scalia took to fraudulently conceal the existence of the student loan cause of

action from plaintiff, but plaintiff has acknowledged in public filings that it was more than aware of the specific fact that it now claims was being concealed until 2020 – namely, that SMU NY was not a subsidiary of SMU. Indeed, the only actions plaintiff alleges that defendant took to conceal this fact was that he made certain arguments in the course of litigation that may have delayed certain rulings or efforts to obtain discovery. This is not sufficient to overcome the fact that here plaintiff was clearly aware not only that SMU and SMU LLC were separate entities but more importantly that plaintiff was aware of the claims relating to the student loans as early as 2015. Even if plaintiff were somehow plausibly ignorant until 2020, the Complaint does not contain any allegations that would suggest such ignorance would be despite reasonable diligence on plaintiff's part. In fact, based on the prior litigation history, such ignorance would clearly not be reasonable. Thus, the Court finds no basis on which to recommend equitable tolling of the statute of limitations, nor on which to recommend a finding that defendant is equitably estopped from asserting the limitations as a defense.[41]

III.  DISMISSAL FOR FAILURE TO STATE A CLAIM

Defendant Scalia also moves to dismiss all of plaintiff's claims pursuant to Rule 12(b)(6) for failing to state a plausible claim for relief and to also dismiss plaintiff's claim for fraud for failure to plead fraud with sufficient particularity. (Def.'s Mem. at 30–34). Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint and calls upon the Court to determine whether the plaintiff has "state[d] a claim upon which relief can be granted." Fed.

---

[41] The doctrine of equitable estoppel applies where the plaintiff was aware of the existence of the cause of action but the misconduct of defendant caused plaintiff to delay commencing suit. Green v. Albert, 199 A.D.2d 465, 466, 605 N.Y.S.2d 395, 396 (2d Dep't 1993); see also Buttry v. General Signal Corp., 68 F.3d 1488, 1493 (2d Cir. 1995). "Equitable estoppel applies 'only where the plaintiff can show that egregious wrongdoing by a defendant prevented plaintiff from brining suit on a claim of which plaintiff was aware.'" Conklin v. Maidenbaum, No. 12 CV 3606, 2013 WL 4083279, at *5 (S.D.N.Y. Aug. 13, 2013) (internal quotation marks omitted) (quoting Price v. Fox Ent. Grp., Inc., 473 F. Supp. 2d 446, 455 (S.D.N.Y. 2007)). Here, neither plaintiff's Complaint nor its response to the motion to dismiss allege any such "egregious wrongdoing" by defendant that thwarted plaintiff's ability to bring suit.

R. Civ. P. 12(b)(6).  When considering a motion to dismiss under Rule 12(b)(6), the Court must

accept as true the factual allegations in the complaint and must draw all reasonable inferences in

favor of the plaintiff.  DiFolco v. MSNBC Cable, LLC, 622 F.3d 104, 110–11 (2d Cir. 2010).  To

survive a motion to dismiss, "a complaint must contain 'enough facts to state a claim to relief

that is plausible on its face.'"  Biro v. Conde Nast, 807 F.3d 541, 544 (2d Cir. 2015) (quoting

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)), cert. denied, 578 U.S. 976 (2016).  A

claim is sufficiently plausible "when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft

v. Iqbal, 556 U.S. 662, 678 (2009).  The standard is not so stringent that the complaint is required

to demonstrate probability, nor is it so lax that the complaint may plead only facts that show a

mere possibility that plaintiff is entitled to relief or that are merely consistent with a defendant's

liability.  See id.  Instead, a plaintiff must provide enough factual support that, if true, would

"raise a right to relief above the speculative level, on the assumption that all the allegations in the

complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550 U.S. at 555–56

(internal citations and footnote omitted).  A court need not, however, accept the truth of legal

conclusions or labels couched as factual allegations, see Papasan v. Allain, 478 U.S. 265, 286

(1986), and "bald assertions and conclusions of law will not suffice."  Amron v. Morgan Stanley

Inv. Advisors, Inc., 464 F.3d 338, 344 (2d Cir. 2006) (quoting Leeds v. Meltz, 85 F.3d 51, 53 (2d

Cir. 1996)).  Ultimately, when the well-pleaded facts allow no more than an inference of a "mere

possibility of misconduct" and the plaintiff has only alleged, rather than shown, an entitlement to

relief, the federal pleading standard of Rule 8(a)(2) has not been satisfied.  Ashcroft v. Iqbal, 556

U.S. at 679.  However, "[t]he issue is not whether a plaintiff will ultimately prevail but whether

the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S.

232, 236 (1974), abrogated on other grounds, Harlow v. Fitzgerald, 457 U.S. 800 (1982); accord

Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013).

A. Conversion and Sufficiency of the Pleading

The elements of a claim of conversion under New York law are: "(1) the property subject

to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control of

the property before its conversion, and (3) defendant exercised an unauthorized dominion over

the thing in question, to the alteration of its condition or to the exclusion of plaintiff's rights." In

re Refco Sec. Litig., 759 F. Supp. 2d 301, 327 (S.D.N.Y.) (quoting Moses v. Martin, 360 F.

Supp. 2d 533, 541 (S.D.N.Y. 2004)), adopting report and recommendation id. at 307–08

(S.D.N.Y. 2010).

Notwithstanding that the statute of limitations bars plaintiff's conversion claims, the

pleadings are notably bereft of sufficient factual information that would raise a plausible claim of

conversion even in the event that the claim were allowed to proceed. As demonstrated by the

analysis of the statute of limitations arguments, the Complaint itself fails to adequately allege

when the alleged conversion occurred or what the specific property subject to conversion was.

The first and second elements of a conversion claim are that there be a specific identifiable thing

of which plaintiff had ownership, possession or control of prior to its conversion. In re Refco

Sec. Litig., 759 F. Supp. 2d at 327.

In its conversion claim, plaintiff merely alleges in conclusory fashion that Scalia

"received specific funds" and received unspecified "valuable assets and business opportunities of

SMU." (Compl. ¶¶ 18–19). Without more, this fails to state a plausible claim that there was

specific identifiable property owned or controlled that was the subject of the conversion. See

Mazzola v. Roomster Corp., 849 F. Supp. 2d 395, 409 (S.D.N.Y. 2012) (holding that "plaintiff

failed to state a claim for conversion" where she generally alleged that money was wrongfully charged to her debit card "because she can point to no specific fund to which she has legal title or a superior right to possession"); see also Calcutti v. SBU, Inc., 224 F. Supp. 2d at 703 (holding "because [plaintiff's conversion] claim is devoid of facts that would put Monaco on notice, the [c]ourt must dismiss it" and indicating that if plaintiff repleads, "the amended complaint must identify the dates, property, possessory right and misconduct it seeks to put at issue").

Given the lack of clarity and detail in plaintiff's Complaint, and construing the pleadings broadly in plaintiff's favor, the Court has looked to the plaintiff's pleadings in the other filed cases in an attempt to discern what property may be at issue in this case, concluding that plaintiff is likely referring to the roughly $177,000 in student loan funds from Nelnet. (See Compl. ¶¶ 15, 16 (referring to the student loan funds); Fla. Compl. ¶¶ 50, 52, 53; SMU 's Promissory Appeal Statement at 5–6, 19).

Assuming the student loan funds are what plaintiff is alleging to be the subject of the conversion claim, the allegation in the Complaint as to what was supposed to occur with the funds and what actually happened to the funds is less than clear. (See Compl. ¶ 16); see also LoPresti v. Terwilliger, 126 F.3d 34, 41–42 (2d Cir. 1997) (holding that it is well settled under New York law that a claim for conversion of money will not lie unless there is an obligation on the part of defendant "to return or otherwise treat in a particular manner the specific money in question") (quoting Vanderbilt Univ. v. Dipsters Corp., No 84 CV 7215, 1986 WL 10471, at *3 (S.D.N.Y. Sept. 17, 1986)); cf. In re MF Global Holdings Ltd. Inv. Litig., 998 F. Supp. 2d 157, 184 (S.D.N.Y. 2014) (explaining that plaintiff's conversion claim survived a motion to dismiss where plaintiff alleged defendant officers of plaintiff's subsidiary exercised unauthorized

dominion over the specific funds by "transferr[ing] customer funds that the CEA and CFTC Regulations required to be segregated and not used for [the subsidiary's] proprietary purposes"), aff'd, 611 F. App'x 34 (2d Cir.), cert. denied sub nom., Bearing Fund LP v. PricewaterhouseCoopers LLP, 577 U.S. 976 (2015).

Here, plaintiff, in its Complaint, alleges that "[a]s of the date of this filing, it has been unascertained whether student loan funds received by SMU N.Y. were ever released by Scalia of SMU N.Y. for SMU's legitimate purposes." (Compl. ¶ 16). Later in the Complaint, however, plaintiff seemingly contradicts this allegation by alleging that the "student loan funds [sic] never released by Scalia or SMU N.Y. to SMU." (Id. ¶ 29). Thus, plaintiff's own allegations are unclear as to what it alleges happened to the student loan funds or even what was supposed to happen with them.

In light of the fact that these same claims have been the subject of several prior cases, where the allegations appear to be related to the same set of underlying transactions and where the claims have been pleaded with more specificity than is alleged in the instant action, the Court concludes that the allegations here are deliberately vague and finds that even viewed in the light most favorable to plaintiff the allegations fail to adequately state a plausible claim of conversion. Therefore, the Court respectfully recommends that the conversion claim be dismissed with prejudice for failure to state a claim.

B. Unjust Enrichment and Sufficiency of the Pleading

Even if the statute of limitations did not bar the unjust enrichment claim, the allegations in the Complaint regarding this claim are also anything but clear.

"The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate

against permitting defendant to retain what plaintiff is seeking to recover." Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004), cert. denied, 544 U.S. 949 (2005); accord United States v. Wolin, 489 F. Supp. 3d 21, 32 (E.D.N.Y. 2020) (quoting Jetro Holdings, LLC v. MasterCard Int'l, Inc., 166 A.D.3d 594, 598, 88 N.Y.S.3d 193, 196–97 (2d Dep't 2018)). An unjust enrichment claim "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790, 944 N.Y.S.2d 732, 740, 967 N.E.2d 1177, 1185, reargument denied, 950 N.Y.S.2d 91, 19 N.Y.3d 937 (2012). It does not apply "where it simply duplicates, or replaces, a conventional contract or tort claim." Id.

On the one hand, plaintiff alleges that defendants were unjustly enriched when they "knowingly accepted a benefit, including the repayment of alleged 'loan' to SMU and student loan funds." (Compl. ¶ 23). To the extent plaintiff may have intended to allude to the Promissory Notes scheme (contrary to its representation in its response to the motion to dismiss), the Complaint seems to suggest, but does not directly allege, that such a loan did not exist; plaintiff alleges that "[i]t would be inequitable for the Defendants to retain the benefit of repayment of *a loan SMU never received*." (Id. ¶ 25 (emphasis added)). Notably, the Complaint does not allege that SMU has paid Scalia for the loans, only that SMU "has since been obligated to pay back" the alleged loans. (Id. ¶ 12). Absent an allegation that defendant Scalia was in fact repaid the amount of the alleged loan and is unlawfully retaining funds that actually belong to plaintiff, the Complaint fails to adequately allege the three elements of an unjust enrichment claim.

Since plaintiff now asserts that the unjust enrichment claim is limited to the transfer of student loan payments to SMU NY, the Complaint suffers from the same deficiencies identified above in connection with the conversion claim. Plaintiff has failed to clearly identify when defendant received the funds, what defendant did or was supposed to do with them, and plaintiff's entitlement to them.

While courts generally grant plaintiffs an opportunity to replead when their claims are dismissed under Rule 12(b)(6) for failure to state a claim, here, because the unjust enrichment claim appears to be barred by the statute of limitations, the Court respectfully recommends that it be dismissed and that any motion to file an amended complaint raising this claim be denied.

C. Fraud and Sufficiency of the Pleading

1. Sufficiency and Rule 12(b)(6)

Apart from the statute of limitations bar, the fraud allegations in the Complaint fail to satisfy the pleading requirements of Rule 12(b)(6). "To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." Financial Guar. Ins. Co. v. Putnam Advisory Co., LLC, 783 F.3d 395, 402 (2d Cir. 2015).

The Complaint alleges that Scalia issued or caused to issue the transfer of student loan proceeds that were to be made available to SMU in Curaçao. (Compl. ¶¶ 27, 28). Although the Complaint alleges that SMU NY "was supposed to make the funds available to SMU in Curaçao" (id. ¶ 28), it fails to allege any deceitful or dishonest action that defendant took that induced plaintiff's reliance on defendant. Thus, there are no allegations in the Complaint that would satisfy the first four aforementioned fraud elements.

Moreover, the Complaint also alleges: "As of the date of this filing, it has been unascertained whether student loan funds received by SMU LLC N.Y. were ever released by Scalia or SMU N.Y. for SMU's legitimate purposes." (Id. ¶ 16). This allegation expressing uncertainty as to whether in fact the funds were released to SMU directly contradicts the later allegation.[42] Thus, plaintiff's Complaint does not even adequately allege an injury. The Complaint therefore fails to make out a claim for fraud.

2. Sufficiency and Rule 9(b)

The defendant also argues that plaintiff's claim for fraud fails to satisfy the pleading requirements under 9(b).

Rule 9 of the Federal Rules of Civil Procedure requires that all allegations of fraud must be stated "with particularity" as to the circumstances surrounding the fraud. Fed R. Civ. P. 9(b). This requires a plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)). As previously mentioned, the pleadings fail to specify what, if any, fraudulent actions or misrepresentations were made by Scalia that were intended to deceive, nor do they state where and when such statements were allegedly made. Id. It is clear from the dismissal Order in the Florida Action that plaintiff has additional facts that could have been alleged in the instant action but were not. Specifically, the Order notes that in its response to defendants' motion to dismiss in the Florida Action, plaintiff argued that "Defendants 'embezzl[ed] . . . U.S. Federal student loan funds

---

[42] Paragraph 29 of the Complaint is actually not a sentence and make no sense as written. It alleges that "[a]s of the date of this filing student loan funds never released by Scalia or SMU N.Y. to SMU or used for SMU's legitimate purposes." (Compl. ¶ 29).

through U.S. shell corporations and bank accounts and . . . *fabricat[ed] the promissory notes to cover up the scheme*.'"  (Fla. Order at 29 (quoting plaintiff's response to defendants' motion to dismiss)).

Moreover, to the extent that the instant Complaint alleges that "defendants" took certain actions (see, e.g., Compl. ¶¶ 31–33), the Second Circuit has made it clear that "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"  Mills v. Polar Molecular Corp., 12 F.3d at 1175 (quoting Luce v. Edelstein, 802 F.2d 49, 54 (2d Cir. 1986)); see also Szulik v. Tagliaferri, 966 F. Supp. 2d 339, 361 (S.D.N.Y. 2013) (holding that a fraud claim against multiple defendants must "set[] forth *separately* the acts complained of *by each defendant*") (quoting Ningbo Prods. Import & Export Co., Ltd. v. Eliau, No. 11 CV 650, 2011 WL 5142756, at *7 (S.D.N.Y. Oct. 31, 2011)).  Here, plaintiff alleges that "SMU N.Y. was supposed to make the funds available to SMU in Curaçao" (Compl. ¶ 28), but does not specify as between Scalia and SMU NY which was responsible for not releasing the funds.  (See, id. ¶ 29 (alleging indiscriminately that the "student loan funds [were] never released by Scalia or SMU N.Y. to SMU")).  Thus, even if the plaintiff could somehow overcome the statute of limitations bar, the Complaint fails to plead a claim of fraud with sufficient particularity against defendant Scalia.

IV.     Summary

This Court finds that the statute of limitations on each of plaintiff's claims has expired and also that each of plaintiff's claims fails to state a claim upon which relief can be granted. Notwithstanding the fraud claim's other failings, plaintiff's claim for fraud also fails to satisfy the pleading requirements of Rule 9(b).  Thus, the Court respectfully recommends that the district court dismiss plaintiff's Complaint with prejudice on these grounds.

V.     <u>Defendant's Alternative Grounds for Dismissal</u>

Defendant also raises alternative grounds for dismissal – namely, collateral estoppel, international comity, and *forum non conveniens*. Although the Court has recommended that the claims in the Complaint be dismissed as untimely under the relevant statutes of limitations, or in the alternative, dismissed pursuant to Rule 12(b)(6) for failure to state a claim and Rule 9(b) for failure to state a claim with sufficient particularity, the Court has briefly addressed defendant's alternative grounds for dismissal and finds that they provide additional reasons for dismissal, as well as grounds for denying any effort on the part of plaintiff to seek to amend its pleadings.

A.   <u>Forum Non Conveniens</u>

Even if dismissal on statute of limitation grounds is not warranted, and plaintiff were to seek an opportunity to re-plead its claims, defendant has urged this Court to dismiss on grounds of *forum non conveniens.*

A court has discretion to dismiss on *forum non conveniens* grounds "when an alternative forum has jurisdiction to hear [the] case, and . . . trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or . . . the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems." <u>Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.</u>, 549 U.S. 422, 429 (2007) (internal quotation marks omitted) (quoting <u>American Dredging Co. v. Miller</u>, 510 U.S. 443, 447–48 (1994)).

In considering motions to dismiss or transfer for *forum non conveniens*, the Second Circuit has established the following three-step test:

> At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a

> court balances the private and public interests implicated in the
> choice of forum.

Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 153 (2d Cir. 2005) (internal citations omitted) (citing Iragorri v. United Techs. Corp., 274 F.3d 65, 73–74 (2d Cir. 2001) (en banc)), cert denied, 547 U.S. 1175 (2006); see also Awadallah v. Western Union Co., No. 14 CV 3493, 2016 WL 11469858, at *3 (E.D.N.Y. Mar. 30, 2016); Republic of Colombia v. Diageo N. Am. Inc., 531 F. Supp. 2d 365, 402–03 (E.D.N.Y. 2007), abrogated on other grounds, RJR Nabisco, Inc. v. European Cmty., 579 U.S. 325 (2016).

When there is a valid forum selection clause, representing the parties' agreement as to the proper forum, the Supreme Court has held that the parties' choice should be "given controlling weight in all but the most exceptional cases." Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex., 571 U.S. 49, 63 (2013) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)); see also id. at 60 (holding that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens"*).

However, defendant's agreement to be sued in the foreign forum does not resolve the question of whether that forum's courts are adequate and would permit litigation of the claims set forth in plaintiff's complaint. See Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d at 157 (quoting Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 75 (2d Cir. 2003)).

In the Florida Action, the court carefully analyzed the issue of *forum non conveniens*, relying on the forum selection clause in the 2010 Shareholders' Agreement, which plaintiff had "not refute[d]" applied to the relationship between the parties. (Fla. Order at 31–32.) The Florida court held that the 2010 Shareholders' Agreement contains a choice of law provision specifying the application of Curaçaoan law, and more importantly, a venue selection clause

providing that "[a]ny differences arising out of this Agreement or any other future agreements resulting here from [sic] shall be exclusively submitted to the Court of [F]irst [I]nstance of Curaçao." (Id. at 31–32 (quoting 2010 Shareholders' Agreement §§ 6.3, 6.5)).  The court explained that even if the student loan claims fell outside the scope of the 2010 Agreement, plaintiff had alleged that they were connected to the Promissory Notes scheme and had also been raised before the courts in Curaçao, suggesting that it would promote efficiency to have any remaining issues addressed in Curaçao.  (Id. at 32–33).

The Florida court also considered the fact that plaintiff SMU is a Curaçaoan company "[b]ecause the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice [of forum] deserves less deference."  (Id. (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 256 (1981))).  The Second Circuit has also held that a foreign plaintiff's choice of a United States forum is given less deference.  See, e.g., Iragorri v. United Tech. Corp., 274 F.3d at 71.

The Florida court also carefully analyzed the adequacy of the courts in Curaçao, concluding that there was "no reason to find that the Curaçaoan judicial system is incompetent, has engaged in fraud, or that its ongoing jurisdiction over the Promissory Notes Appeal would be 'prejudicial, in the sense of violating American public policy.'"  (Id. at 30–31 (quoting Turner Ent. Co. v. Degeto Film GmbH, 25 F.3d at 1519)).  Indeed, plaintiff commenced the 2015 Omnibus Case, raised new claims in the March 2019 Promissory Notes Appeal in Curaçao, and initiated another case in Curaçao in February 2021, demonstrating its continued intention to obtain recourse in the Curaçaoan courts.  See Saud v. PIA Invs. Ltd., No. 07 CV 5603, 2007 WL 4457441, at *3 (S.D.N.Y. Dec. 14, 2007) (finding that the British Virgin Islands was an adequate forum where the plaintiff had previously commenced suit there regarding the same subject

matter and against the same defendant). As the court in the Florida Action noted, given the prior history in Curaçao, Curaçao has an interest in continuing to assert jurisdiction over what is essentially a matter local to Curaçao and has already been the subject of extensive litigation in Curaçaoan courts. (Fla. Order at 34).

Turning to the instant case, perhaps more critical to this analysis is the 2007 Shareholders Agreement that plaintiff attached to its second amended complaint in the Florida Action, signed by defendant Scalia, which also has a forum selection clause and a mandatory choice of law provision designating Curaçao as the venue for litigating issues relating to the shareholders.[43] (2007 Shareholders' Agreement §§ 3.1–.2). Thus, even if the 2007 and 2010 Shareholders' Agreements did not dictate venue in connection with the student loan scheme, the Agreements demonstrate the intention of all parties to submit themselves to Curaçao's able jurisdiction.[44] Given also the fact that the courts in Curaçao have been handling cases dealing with these same issues since 2015, the Court finds that Curaçao is an available forum.

Having independently analyzed the arguments of the parties, the Court agrees with the Florida court's conclusion that Curaçao is also an adequate forum and there is nothing to suggest that the judicial system is incapable of affording a fair and meaningful hearing of plaintiff's claims. On balance, the public and private interests weigh in favor of proceeding in Curaçao as this case involves a Curaçaoan entity and this issue has already been raised in Curaçaoan courts, readily able to interpret and apply Curaçaoan law. This leads the Court to respectfully

---

[43] Neither party seems to argue that the forum selection clause is invalid. Instead, plaintiff argues that "**SMU LLC [referring to SMU NY]** is *not* a signatory to the CHH shareholder agreement" (Pl.'s Resp. at 12) (bold emphasis added); this point, however, is irrelevant as SMU NY is not the party seeking to invoke the forum selection clause, and has not been served or appeared in the action.

[44] The Court is not interpreting nor enforcing the forum selection clause; instead, the clause indicates that the parties contemplated Curaçao as an adequate and available forum, and is relevant to determining how much deference to give plaintiff's choice of forum.

recommend dismissal on grounds of *foreign non conveniens* as an alternative ground for dismissal.

B. International Comity Concerns

Defendant also urges the court to abstain from exercising jurisdiction over this dispute based on principles of international comity. (Def.'s Mem. at 19).

A court will dismiss a case on international comity grounds where "exceptional circumstances exist that justify the surrender of that jurisdiction." Leopard Marine & Trading, Ltd. v. East St. Ltd., 896 F.3d 174, 189 (2d Cir. 2018) (quoting Royal & Sun All. Ins. Co. of Can. v. Century Int'l Arms, Inc., 466 F.3d 88, 93 (2d Cir. 2006)). "In the context of parallel proceedings in a foreign court, a district court should be guided by the principles upon which international comity is based: the proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency." Royal & Sun All. Ins. Co. of Can. v. Century Int'l Arms, Inc., 466 F.3d at 94 (citing Turner Ent. Co. v. Degeto Film GmbH, 25 F.3d at 1518)). Relevant factors to evaluate include:

> the similarity of the parties, the similarity of the issues, the order in which the actions were filed, the adequacy of the alternate forum, the potential prejudice to either party, the convenience of the parties, the connection between the litigation and the United States, and the connection between the litigation and the foreign jurisdiction.

Id.

Like the *forum non conveniens* analysis,[45] the court in the Florida Action carefully considered the factors that caution abstention in the context of international comity and concluded that abstention was appropriate here where the allegations relating to the promissory notes are the subject of foreign judgments or parallel legal proceedings in Curaçao. (Fla. Order

---

[45] See discussion supra at 38–42.

at 22–29). While the court found that it was unclear to what extent the student loan allegations were included as part of the foreign judgments and parallel legal proceedings, the court concluded that the student loan scheme allegations "are entangled with the Promissory Notes dispute and have been introduced in an ongoing Curaçaoan proceeding." (Id. at 30). Thus, the court ruled that comity, fairness and efficiency favor abstention from the exercise of jurisdiction in Florida. (Id. at 29, 31).[46]

This Court has considered all of the relevant factors, and concludes, consistent with the Florida court's findings that the courts in Curaçao were neither incompetent nor that their proceedings violated American public policy notions of justice and fairness. This Court further agrees with the court in the Florida Action, finding no basis to discredit the Curaçaoan courts. All of the other factors, including the fact that plaintiff is a Curaçaoan entity, litigating issues that arose in the context of business dealings with a Curaçaoan university, and that there have been and continue to be court proceedings and judgments entered in those proceedings in Curaçao, caution the Court to recommend abstention out of principles of international comity and the need to respect the judgments of the Curaçaoan courts.[47]

---

[46] Since the time that the Florida Order was issued on February 27, 2020, the Joint Court issued its decisions in the Curaçao Promissory Notes case and the 2015 Curaçao Omnibus case – both on July 28, 2020. CHH then filed an appeal in the Promissory Notes case, which the Supreme Court of the Netherlands rejected on April 22, 2022. Plaintiff provided the Court with the Supreme Court's decision on May 4, 2022 after this motion was filed but neither party addressed the new decision or what impact it had on this case, if any. (ECF No. 30). In light of the Supreme Court's decision, it is unclear to what extent there is litigation still pending in Curaçao. It is unclear if there are any claims raised in litigation commenced by SMU in February 2021, seeking repayment from CHH on the Promissory Notes, still pending. Without any information as to whether there are still pending cases in Curaçao, it is unclear what if any impact that might have on the international comity analysis. However, because the Court recommends dismissal of this action based on the expiration of the statute of limitations of the claims, the Complaint's failure to state a claim, and *forum non conveniens*, the Court finds no reason to require additional briefing on this issue.

[47] Defendant also raises issues of collateral estoppel and argues that the Florida court's determination that plaintiff's claims should be adjudicated in Curaçao serves to collaterally estop plaintiff from relitigating the arguments as to *forum non conveniens* and abstention. Since this Court has independently reviewed the factors underlying each of these doctrines and agrees with the conclusions of the Florida court, the Court has not addressed the collateral estoppel arguments.

<u>CONCLUSION</u>

Having reviewed the Complaint and the parties' respective papers, the Court respectfully recommends that the claims be dismissed as untimely and beyond the relevant statute of limitations. In addition, the Court further finds that the Complaint would be subject to dismissal for failure to state a claim under Rule 12(b)(6) and for failure to plead fraud with sufficient particularity under Rule 9(b). If, for some reason, the district court disagrees with this Court's analysis, the doctrines of *forum non conveniens* and international comity support dismissal as well. Thus, for all the reasons set forth above, the Court respectfully recommends that the case be dismissed in its entirety with prejudice.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; <u>Caidor v. Onondaga Cnty.</u>, 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
March 9, 2023

*Cheryl L. Pollak*
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York